IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SEFANIT TESFA,

    Plaintiff,

v.

AMERICAN RED CROSS,

    Defendants.

Case No. 2:12-cv-0397
JUDGE GREGORY L. FROST
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court on the motion for summary judgment of Defendant American Red Cross (ECF No. 28), Plaintiff Sefanit Tesfa's memorandum in opposition to the motion for summary judgment (ECF No. 31), and Defendant's reply brief in further support of its motion (ECF No. 35). For the reasons set forth in more detail below, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion: Plaintiff's national origin discrimination claim survives; her race discrimination claim does not.

### I.

This is an employment discrimination case in which Plaintiff Tesfa alleges that she was denied a promotion on the basis of her race (Black) and her national origin (Ethiopian).

Defendant American Red Cross (the "Red Cross") hired Plaintiff Tesfa for a "Technical Assistant II" position in 2002. In that position, Tesfa worked in the Component Manufacturing Lab, where the Red Cross manufactures blood components from whole blood donations for use at hospitals and other medical facilities. Tesfa's responsibilities as a Technical Assistant II included preparing blood components, manufacturing, processing, labeling, storing blood

products, and performing certain data entry tasks. From the date of her hire in 2002 until sometime in 2010, Tesfa worked second shift, from 4:00 p.m. until 2:00 a.m.

In 2004, the Red Cross promoted Tesfa to a "Technologist II" position. In this capacity, Plaintiff's job responsibilities included advanced manufacturing of blood components, assumption of some supervisory functions, communicating and working with hospital transfusion staff, and communicating and working with National Testing Laboratory staff. While in the Technologist II position, Tesfa received performance evaluations. Her overall performance rating for fiscal years 2006 to 2010 was consistently "exceeds expectations." Despite this overall rating, the Red Cross identified on her performance evaluations areas that were characterized as problematic or needing improvement. For example, in her evaluation for the 2007-08 fiscal period, she was rated "unsatisfactory" in her ability to "minimize problems," with the Red Cross citing 29 problems (including one "Level 3 problem") during the fiscal year. Nonetheless, the same evaluation in which she rated "unsatisfactory" in this respect was positive in its assessment of Tesfa's overall performance and potential for promotion with the Red Cross:

> Sefanit has received an Exceeds Expectations/4 rating,[1] because of her outstanding performance this fiscal year. In the past year, her leadership, problem solving skills, and knowledge of component manufacturing have made significant progress. While giving work direction, training others, etc., Sefanit speaks to others respectfully and maintains a professional manner. With the exception of the number of problems that she was involved in this past year, her performance exceeded all expectations. She is a vital member of the component manufacturing team; her service and the expertise that she brings to the Central Ohio Region is invaluable.

(ECF No. 27-17 at PageID# 538.) The same evaluation added that Tesfa "has potential to become a Laboratory Supervisor." (*Id.*)

---

[1] The Red Cross's performance evaluations rated employees on a scale of 1 through 5. The number 1 denotes "unsatisfactory" performance; number 2 denotes "needs development"; number 3 denotes "meets expectations"; number 4 denotes "exceeds expectations"; and number 5 denotes "exceptional" performance. (ECF No. 27-17 at PageID# 538.)

Tesfa's evaluation for the 2009-10 fiscal period was similarly positive. Under the core competency of "Decision Making, Problem Solving and Innovation," the review indicated improvement from the previous year in Tesfa's problem solving skills. (ECF No. 27-18 at PageID# 545.) Tesfa was also singled out as "the most trusted trainer, especially for new personnel" because she could be counted on "to ensure that they understand what is expected of them." (*Id.*) Her supervisor's comments also expressed the view that Tesfa was "the most reliable person in the laboratory," but also advised her "to not let the more pushy staff tell her how to do or run things." (*Id.* at PageID# 547.) Overall, her supervisor gave her an "exceeded expectations" rating. (*Id.*)

During Tesfa's time as a Technologist II, a position for Laboratory Supervisor came open multiple times. The Red Cross's job description for Laboratory Supervisor listed the following qualifications for the position:

> Bachelor's degree in science, or equivalent combination of related education and experience required. Three years experience including one year supervisory experience required. MT (ASCP) certifications or equivalent certifications where required. Pharmaceutical manufacturing experience preferred. Must have effective communication and customer service skills. Knowledge of blood products, supplies, and the ability to interact with diverse customers (internal and external) is required.

(ECF No. 31-6 at PageID# 648.)

Tesfa applied for the promotion to Laboratory Supervisor six different times—three times in 2007, twice in the fall of 2010, and once in February/March 2011. Tesfa's applications for promotion were not successful. The persons chosen for these positions were Tracey Mattia (2007), Shawn Cericola (2007), Jason Hughey (2007), Amy Weinberg (October 2010), Matthew Gibson (November 2010), and Brian Boxill (March 2011). Of these persons, Mattia and Boxill are Black.

Laura Starkey, a Red Cross Lab Manager in 2007, was the decisionmaker for the three promotions in 2007.  In her deposition, Starkey testified that she chose Mattia over Tesfa because of Mattia's troubleshooting experience as a Technologist II and her experience as an "acting supervisor" during weekend shifts.  (Starkey Dep. 86-87, ECF No. 25 at PageID# 113.) In Cericola's case, Starkey considered him the most qualified candidate for the Laboratory Supervisor position because of his strong leadership skills in a similar position to the Red Cross's "lead technician" positions.  (*Id.* at 88.)  As for Hughey, Starkey testified that he was more qualified than Tesfa to be placed in a supervisory role.  (*Id.* at 47, PageID# 103.)  At that time, Starkey felt that Tesfa's supervisory skills were weak, due mainly to Tesfa's tendency to avoid conflict with staff.  (*Id.* at 48-49.)

The Red Cross's decisionmaker for the Gibson and Boxill promotions in 2010 and 2011 was Evette Wise.  At her deposition, Wise testified that Gibson was a superior candidate due to his experience as the acting supervisor during a period when Mattia was on maternity leave. (Wise Dep. 121-22, ECF No. 26 at PageID# 157-58.)  Like Starkey, Wise also testified that Tesfa "avoids conflict" and was not as good as Gibson was in dealing with the staff.  (*Id.*)  Wise further elaborated that while Tesfa was good at the "technical" aspects of the job, Gibson was "the full package," meaning he had the technical skills and the "people skills that you need . . . to deal with the varied personalities that we have in the laboratory."  (*Id.* at 155, PageID# 166.)

As for the decision to promote Boxill to a Laboratory Supervisor position in 2011, Wise's testimony reveals that she did not consider Tesfa for the position at all.  Due to Mattia moving to a first shift supervisor position on weekdays, the supervisor position that came open in 2011 was a second shift position for Fridays, Saturdays, Sundays, and Mondays.  (*Id.* at 124, PageID# 158.)  According to Wise, Tesfa "did not apply" for the position and was not interviewed for that

4

reason. (*Id.*) For her part, Tesfa disputes Wise's account, saying (1) that she did, in fact, apply for the position that ultimately went to Boxill and (2) that at no time did she inform Wise or anyone else that she was not interested in the promotion because it was a Friday-to-Monday second shift position. (Tesfa Dec.¶¶ 1 and 10, ECF No. 31-1 at PageID# 618-19.)

As for Boxill's qualifications for the Laboratory Supervisor position, Wise acknowledged that Boxill lacked some of the technical experience that Tesfa had. At the time, Boxill had worked at the Red Cross for 14 years in a variety of positions, starting as a courier before working his way to "cell saver technologist" at the time he applied for promotion to Lab Supervisor. Wise was also aware that Boxill, unlike Tesfa, did not have a bachelor's degree of any kind, much less in science. (Wise Dep. 144, ECF No. 26 at PageID# 163.) Wise indicated, however, that Boxill "brought, in my mind, more supervisory skills to the table than [Tesfa] did." (*Id.* at 149, PageID# 164.) In Wise's view, it was easier to train Boxill in the "technical" aspects of the job than it would have been to train Tesfa in "the soft people skills" needed to be an effective supervisor. (*Id.*)

In April 2011, less than a month after Boxill received the promotion to Laboratory Supervisor, Tesfa filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued its dismissal and notice of right to sue in December 2011, finding that it was unable to conclude that the information Tesfa provided established unlawful employment discrimination. Tesfa then commenced this action in the Franklin County (Ohio) Court of Common Pleas, alleging a claim of race and/or national origin discrimination under Chapter 4112 of the Ohio Revised Code. The Red Cross removed the case to this Court, invoking federal jurisdiction under 36 U.S.C. § 300105(a)(5) and *American Natl. Red Cross v. S.G. & A.E.*, 505 U.S. 247, 257 (1992).

The Red Cross now moves for summary judgment, contending that Tesfa has failed to establish a genuine issue of material fact for trial on the ultimate question of whether the Red Cross unlawfully discriminated against her when it passed her over for promotion. The Red Cross's motion is fully briefed and ripe for this Court's adjudication.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

As the party seeking summary judgment, the Red Cross bears the initial responsibility of (1) informing the district court of the basis for its motion and (2) identifying the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to Tesfa, who as the nonmoving party must show that there is a genuine dispute for trial. Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie Power Prods., Inc.*, 328 F.3d at 873 (quoting *Anderson*, 477 U.S. at 248); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Thus, the central issue on a motion for summary judgment is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### A. Only the Boxill Promotion is at Issue

Before proceeding to the merits of the Red Cross's motion for summary judgment, the Court takes a moment to clarify what issues are before it. In her deposition, Tesfa testified that she unsuccessfully applied for a promotion to Laboratory Supervisor at least six times: three of these were in 2007, two were in 2010, and one was in 2011. Only the 2011 promotion—the one that Boxill received over Tesfa—is before the Court at this juncture.

The 2007 promotions are not part of this case because Tesfa did not plead any of those as a basis of her discrimination allegations. The Complaint conspicuously identified only three promotions as having been discriminatory against her—the promotion of Gibson in November 2010 and the promotions of Mattia and Boxill in March 2011. (Compl. ¶¶ 14-17, ECF No. 3 at PageID# 13-14.)[2] Thus, the 2007 promotions cannot form the basis of any discrimination claim in this case. *See Spengler v. Worthington Cylinders*, 514 F. Supp. 2d 1011, 1017 (S.D. Ohio 2007) (noting that a plaintiff may not defeat summary judgment by asserting a claim not pleaded in the complaint). In any event, Tesfa's opposition to the Red Cross's summary judgment motion makes no argument concerning the 2007 promotions for which she was passed over. So, simply put, the Red Cross's 2007 promotion decisions are not a part of this case.

As for the 2010 promotions of Weinberg and Gibson, neither one of those is before the Court at this time. Tesfa's opposition to summary judgment does not place either of those

---

[2] Based on the evidence of record, it appears that the Complaint inaccurately states that Mattia was promoted to the Laboratory Supervisor position in March 2011. The summary judgment evidence indicates that Mattia was promoted in 2007; in March 2011, Mattia switched to another Laboratory Supervisor position, working a different shift. In her opposition to the Red Cross's summary judgment motion, Tesfa does not contend that Mattia was promoted in March 2011, effectively abandoning said claim in her Complaint.

7

promotions at issue. Tesfa focuses her arguments solely upon the promotion of Boxill to Laboratory Supervisor in March 2011. (Pl.'s Opp'n, ECF No. 31 at PageID# 610-16.) The parties' briefing (in particular, Plaintiff's memorandum in opposition) has therefore streamlined the matters before the Court. The only matter at issue for this Court's adjudication is whether Tesfa has established a genuine issue of material fact with respect to whether Boxill's promotion to Laboratory Supervisor over her was discriminatory on the basis of race or national origin.

### B.  National Origin Discrimination

The gravamen of Tesfa's action is her allegation that the Red Cross denied her a promotion to Laboratory Supervisor on the basis of her race (Black) or her national origin (Ethiopia) in violation of Ohio Rev. Code §§ 4112.02 and 4112.99. (Compl. ¶¶ 21-22, ECF No. 3 at PageID# 15.)[3] Though Ohio law supplies the substantive law in this case, Ohio courts have routinely recognized that federal case law interpreting Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) is generally applicable to cases involving alleged violation of Chapter 4112 of the Ohio Revised Code. *See, e.g., Ohio Civ. Rights Comm'n v. David Richard Ingram, D.C.*, 69 Ohio St. 3d 89, 93, 630 N.E. 2d 669 (Ohio 1994); *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm'n*, 66 Ohio St. 2d 192, 196, 421 N.E. 2d 128 (Ohio 1981); *see also Vinson v. MTD Consumer Group, Inc.*, No. 1:11-cv-1259, 2013 U.S. Dist. LEXIS 27424, at *18 (N.D. Ohio Jan. 24, 2013) (applying Title VII burden-shifting framework to a failure-to-promote case brought under Ohio Rev. Code §§ 4112.02 and 4112.99).

---

[3] Ohio Rev. Code § 4112.02(A) provides that it is an unlawful discriminatory practice "[f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.99 provides that anyone who violates § 4112.02(A) "is subject to a civil action for damages, injunctive relief, or any other appropriate relief."

8

Tesfa does not identify any so-called direct evidence of discrimination on the basis of race or national origin. Thus, the Court will analyze her claims using the familiar *McDonnell Douglas* framework. *Kumar v. Aldrich Chem. Co.*, 911 F. Supp. 2d 571, 584 (S.D. Ohio 2012); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). To establish a prima facie case of discrimination on a failure to promote claim, Tesfa must establish (1) membership in a protected class, (2) that she applied and was qualified for a promotion, (3) that the Red Cross considered her and denied the promotion, and (4) other employees of similar qualifications who were not members of the protected class received promotion. *Provenzano v. LCI Holdings, Inc.*, 636 F.3d 806, 812-13 (6th Cir. 2011). The plaintiff's burden at the prima facie stage "is not onerous," posing a burden that is "easily met." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981) and *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)). The prima facie stage "is 'only the first stage of proof in a Title VII case,' and its purpose is simply to 'force [a] defendant to proceed with its case.'" *Id.* (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861-62 (6th Cir. 1997)).

If Tesfa establishes a prima facie case, the burden shifts to the Red Cross to proffer a legitimate, nondiscriminatory reason for its decision not to promote Tesfa. *Provenzano*, 663 F.3d at 814. If the Red Cross meets that burden of production, the burden then shifts back to Tesfa to demonstrate that the Red Cross's proffered reason for passing her over for promotion is a pretext for discrimination. *Id.* at 815.

### 1. Prima Facie Case for National Origin Discrimination

As to Tesfa's claim for national origin discrimination, it is not disputed that Tesfa is a member of a protected class (*i.e.*, being of Ethiopian descent), that she was denied promotion in

9

March 2011, and that an American-born candidate (Boxill) received the promotion. Thus, the only prong of the prima facie case that is at issue is the second one—whether Tesfa applied for and was qualified for promotion to Laboratory Supervisor.

The Red Cross's primary argument in favor of summary judgment is that Tesfa was unqualified for promotion to Laboratory Supervisor. Emphasizing the deposition testimony of Starkey and Wise, both of whom assessed Tesfa's qualifications for promotion, the Red Cross argues that Tesfa lacked the people skills that a good supervisor needs. In particular, the Red Cross makes much of the fact that Tesfa acknowledged that she does not like confrontation. This "tendency to avoid conflict," as Starkey described it in her deposition, is a strike against Tesfa's qualifications to be a supervisor. (Starkey Dep. 48, ECF No. 25 at PageID# 103.) Wise, who was the ultimate decisionmaker with respect to Boxill's promotion, echoed Starkey's assessment of Tesfa. Though acknowledging that Tesfa was highly skilled in the "technical" aspects of job, Wise did not consider Tesfa to have the "full package" of skills necessary to be a supervisor because Tesfa lacked the "people skills" to be an effective supervisor. (Wise Dep. 132, ECF No. 26 at PageID# 160.)

For her part, Tesfa disputes the notion that she lacked the people skills that would make her qualified to be Laboratory Supervisor. Tesfa points to her performance evaluations, one of which cited her "ability to interact with diverse customers" as "outstanding." In addition, Tesfa argues that she satisfied most (if not all) of the objective qualifications listed for the Laboratory Supervisor job description: she has (1) a bachelor's degree in microbiology from Idaho State University, (2) more than ten years of experience in the Red Cross's Component Manufacturing lab, and (3) served as "Acting Supervisor" in the Component Manufacturing lab.

Bearing in mind that a plaintiff's burden at the prima facie case stage "is not onerous," *Cline*, 206 F.3d at 660, the Court has no trouble concluding that Tesfa has cleared the hurdle of establishing that she was qualified for the promotion to Laboratory Supervisor. In reaching this conclusion, the Court heeds the Sixth Circuit's analysis of the relevant considerations that come into play when analyzing a plaintiff's qualifications at the prima facie stage:

> At the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job. *See Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1298 (D.C.Cir.1998) (en banc) (noting that "courts traditionally treat explanations that rely heavily on subjective considerations with caution," and that "an employer's asserted strong reliance on subjective feelings about the candidates may mask discrimination"); *MacDonald v. E. Wyo. Mental Health Ctr.,* 941 F.2d 1115, 1121 (10th Cir.1991) (holding that a plaintiff can show that she is qualified by presenting "credible evidence that she continued to possess the *objective qualifications* she held when she was hired") (emphasis added). The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field. Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills.

*Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003).

Based on the objective qualifications listed in the Red Cross's job description, Tesfa was at least minimally qualified for the Laboratory Supervisor position. Tesfa possesses a bachelor's degree in the science field (microbiology), had more than 10 years of relevant experience, and had relevant knowledge of blood products and supplies from her experience working with the Red Cross. She also had supervisory experience as an acting supervisor. Under the teaching of *Wexler*, Tesfa satisfied the Red Cross's objective qualifications enough to clear the second prong of her prima facie case.

The Red Cross is adamant in its position that Tesfa was unqualified to be a supervisor and urges the Court to find that she cannot make out a prima facie case because her

qualifications are lacking. The Red Cross points to Starkey's and Wise's assessment of Tesfa's supervisory and "people skills" as evidence that Tesfa was unqualified. While the Court understands that inquiry into Tesfa's supervisory and people skills is germane to the analysis of whether Tesfa was qualified for the promotion in question, such an assessment is not appropriate at the prima facie case stage. Unlike readily verifiable information concerning a college degree or a level of experience (which are inherently objective criteria), the assessment of whether Tesfa had the people skills or demeanor to be an effective supervisor are inherently *subjective* qualifications that the Court cannot consider at the prima facie case stage. *Cf. Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) (noting that whether a candidate possessed a subjective quality like "leadership or management skill" should be considered in the later stages of the *McDonnell Douglas* inquiry and not at the prima facie case stage) (cited with approval in *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 n.6 (6th Cir. 2005)); *Vinson v. MTD Consumer Group.*, 2013 U.S. Dist. LEXIS 27424 at *23 (finding that a plaintiff's purported "lack of leadership skills" was a subjective measure not appropriate for consideration at the *prima facie* case stage). To consider subjective criteria at the prima facie case stage is inconsistent with the purpose and structure of the *McDonnell Douglas* burden-shifting framework. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005) (cited with approval in *White*).

In addition, the Court notes that the Red Cross relies on Starkey's and Wise's negative opinions of Tesfa's qualifications as one of the proffered justifications for the decision not to promote Tesfa to Laboratory Supervisor. (Def.'s Mot., ECF No. 28 at PageID# 592.) That being the case, these opinions have no place in the analysis of whether Tesfa has made out a prima facie case for discrimination. As the Sixth Circuit has repeatedly noted, the evaluation of an

employment discrimination plaintiff's prima facie case "must be conducted independently of [the employer's] proffered nondiscriminatory reason and must not conflate the prima facie and pretext stages of the *McDonnell Douglas* test." *Provenzano*, 663 F.3d at 813 (citing *White*, 429 F.3d at 242); *see also Cline*, 206 F.3d at 661.

For the reasons stated above, the Court finds that a reasonable jury could find that Tesfa satisfied the objective criteria for promotion to Laboratory Supervisor. Accordingly, Tesfa has met her burden of establishing a prima facie case of national origin discrimination.

### 2. Pretext

The Red Cross proffers two nondiscriminatory reasons for its decision not to promote Tesfa to Laboratory Supervisor: (1) Tesfa did not apply for the promotion that ultimately went to Boxill and (2) in any event, Tesfa lacked the supervisory and people skills necessary to be a good supervisor. Thus, the burden shifts back to Tesfa to demonstrate a genuine issue of material fact as to whether the Red Cross's proffered justifications are pretextual.

A plaintiff can demonstrate pretext by showing that an employer's proffered reasons for an adverse employment action (1) had no basis in fact, (2) did not actually motivate the employer's conduct, or (3) were insufficient to warrant the challenged conduct. *White*, 429 F.3d at 245; *Wexler*, 317 F.3d at 576. The relative qualifications of applicants may also establish a triable issue of fact as to pretext. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 626-27 (6th Cir. 2006). A comparison of applicants' relative qualifications can be probative of pretext where the evidence shows that the plaintiff was either (1) a plainly superior candidate, such that no reasonable employer would have passed her over in favor of the successful applicant, or (2) as qualified, if not better qualified, than the successful applicant, and the record contains "other

13

probative evidence of discrimination." *Id.* at 627-28; *see also Bartlett v. Gates*, 421 F. App'x 485, 491 (6th Cir. 2010).

### a. Tesfa's Interest in a Second Shift Supervisor Position

At her deposition, Wise testified that she did not interview Tesfa for the 2011 Laboratory Supervisor opening because "[s]he did not apply" for the job. (Wise Dep. 124, ECF No. 26 at PageID# 158.) Because the position was for second shift on Fridays to Mondays, Wise thought Tesfa was not interested in it because of her well-known preference for first shift over second shift. (*Id.*) Based solely on her conversation with Wise, Starkey also thought that Tesfa was not interested in a second shift supervisor position. (Starkey Dep. 37-38, ECF No. 25 at PageID# 100-01.)

Viewing the record evidence in the light most favorable to Tesfa, the Court concludes that a reasonable jury could disbelieve the Red Cross's explanation. Tesfa's declaration submitted in opposition to the Red Cross's motion for summary judgment states unequivocally that she applied for the open Laboratory Supervisor position in February 2011 and that she did not withdraw her application, even though she knew the opening was for second shift. (Tesfa Dec. ¶¶ 1, 7, 10, ECF No. 31-1.) This evidential discrepancy alone creates a genuine issue of material fact with regard to whether the Red Cross's justification was false.

Moreover, deposition testimony of the Red Cross witnesses supports the existence of a genuine factual issue for trial. Based on the deposition testimony of Starkey and Wise, the Red Cross takes the position that Tesfa applied for the promotion in February 2011, but withdrew her application when it was revealed that the position was for second shift instead of "day shift." (Starkey Dep. 35, ECF No. 25 at PageID# 100.) But nowhere is it documented in the Red Cross's records that Tesfa withdrew her application for the promotion. And Wise acknowledged

14

that if Tesfa had indeed withdrawn her application for the position after learning it was for second shift, Tesfa's intent would have been documented somewhere in the Red Cross's personnel records. (Wise Dep. 129, ECF No. 26 at PageID# 159.)

Clinging to the notion that Tesfa was not interested in the second shift supervisory position, the Red Cross emphasizes (citing Tesfa's deposition) that Tesfa tried for seven years to move from second shift to first shift, finally getting her wish in March or April 2011. (Def.'s Reply, ECF No. 35 at PageID# 682.) Thus, the Red Cross argues that "[n]o reasonable jury could believe that Plaintiff was interested" in the second shift supervisor position based on these facts. (*Id.* at PageID# 683.) The Court is not persuaded, however, as a reasonable jury could easily reject the Red Cross's rationale. Even though Tesfa tried for years to move from second shift to first shift, it is not implausible that she would have taken a second shift position *for a promotion* to Laboratory Supervisor. In the Court's view, a reasonable jury could easily conclude that Tesfa (or any employee for that matter) would be willing to switch work shifts in order to secure a promotion.

### b. Tesfa's Supervisory and People Skills

The Red Cross also contends that Tesfa was unqualified for a Laboratory Supervisor position because she lacked the supervisory and people skills to be effective in that role. As the Sixth Circuit has observed, examining certain subjective qualifications, though not appropriate at the prima facie case stage, may be germane to the inquiry of whether the employer's proffered justification is a pretext for discrimination. *See Provenzano*, 663 F.3d at 814 (explaining that the "light review" of a plaintiff's qualifications at the prima facie stage "must be distinguished from the more rigorous comparison conducted at the later stage of the *McDonnell Douglas* analysis").

15

In the Court's view, the record establishes a triable issue as to whether Starkey's and Wise's opinions with regard to Tesfa's supervisory and people skills actually motivated the decision not to promote her. The assessments of Starkey and Wise appear inconsistent with Tesfa's performance evaluations. Though Starkey and Wise questioned Tesfa's people skills, Tesfa's 2010 performance evaluation (signed by Wise as Tesfa's "next-level supervisor") described Tesfa as "a good leader," "well-liked," and "an asset to the laboratory leadership team." (ECF No. 27-18 at PageID# 545.) In the area of "Leadership Competencies," the same 2010 performance evaluation described Tesfa as "selfless when it comes to training others" and also noted that Tesfa was the Red Cross's "most trusted trainer, especially for new personnel." (*Id.*) Overall in the area of "Leadership Competencies," Tesfa's supervisor gave her a "4" rating, denoting that Tesfa "exceeded expectations" in that area. (*Id.* at PageID# 546.) Her supervisor's comments also indicated that Tesfa "is a valuable entity to the laboratory and a shining example for others to follow." (*Id.* at PageID# 547.)

Tesfa's 2010 evaluation was not an outlier: her evaluations during her time as a Technologist II were consistently good and contained indications that Tesfa was supervisor material. In 2008, for example, Tesfa's supervisor gave her a rating of "5" (denoting "exceptional" performance) in the area of "clearly and effectively" communicating to individuals and groups, as well as the area of working "effectively with internal and external customers." (ECF No. 27-17 at PageID# 537.) The evaluation rated Tesfa as a "4" overall ("exceeds expectations") and suggested that Tesfa "had the potential to become a Laboratory Supervisor." (*Id.* at PageID# 538.) Similarly, in 2007, an evaluation signed by Starkey as Tesfa's "next level supervisor," described Tesfa as "a role model and source of guidance to her co-workers." (ECF No. 27-15 at PageID# 531.) These positive assessments of Tesfa's qualifications and skills could

16

lead a reasonable jury to conclude that the proffered justification that Tesfa lacked supervisory and people skills was pretextual.

For its part, the Red Cross questions the probative value of the glowing evaluations of Tesfa's performance. The Red Cross makes much of the fact that these were evaluations of Tesfa's performance as a Technologist II and therefore have little bearing on whether she would be effective in a Laboratory Supervisor position. Relying on *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (6th Cir. 2005), the Red Cross argues that Tesfa cannot escape summary judgment because "good performance in a lower position does not indicate qualifications for a promotion." (Def.'s Reply, ECF No. 35 at PageID# 683.) But *Anderson* does not dictate that summary judgment be granted for the Red Cross here. In this case, Tesfa's evaluations described leadership competencies and, in one instance, actively encouraged Tesfa to seek a promotion to Laboratory Supervisor. Thus, unlike in *Anderson*, there is evidence in the record that could compel a reasonable jury to conclude that the Red Cross harbored at least some belief that Tesfa was qualified for promotion to Laboratory Supervisor. Moreover, the Red Cross's argument is curious given the relative qualifications of Boxill (the successful applicant for promotion) and Tesfa. The Red Cross lauds Boxill's qualifications for the position, but *his* performance was—like Tesfa's—in a "lower position" (to use the Red Cross's words). The Red Cross does not persuasively explain how the positive assessment of Boxill's performance in a lower position should be relevant while Tesfa's should not.

The Court is also persuaded that a triable issue on pretext exists based on the relative qualifications of Boxill and Tesfa. As noted above, comparison of applicants' relative qualifications can reveal a genuine issue of material fact as to pretext where the evidence shows either (1) that the plaintiff was a plainly superior candidate, such that no reasonable employer

17

would have passed her over in favor of the successful applicant, or (2) that the plaintiff was as qualified, if not better qualified, than the successful applicant, and the record contains "other probative evidence of discrimination." *Bartlett*, 421 F. App'x at 491. Here, the relative qualifications of Boxill and Tesfa are such that a reasonable fact finder could believe that Tesfa was the superior candidate. For example, Tesfa possessed a bachelor's degree in science, Boxill did not; Tesfa had laboratory experience, Boxill did not; and Tesfa had more experience training laboratory technologists than did Boxill. The fact that Tesfa's resume seemed to have these objective advantages over Boxill's, coupled with the fact that Tesfa's performance evaluations arguably belie Starkey's and Wise's opinions about Tesfa's supervisory ability and people skills, could lead a reasonable jury to disbelieve the Red Cross's explanation for promoting Boxill over Tesfa.

In reaching its conclusion, the Court is not stating that Tesfa is necessarily more qualified than Boxill or that Tesfa should have received the promotion over Boxill. A court does not sit as a "super personnel department" that second-guesses an employer's hiring and promotion decisions. *Bender*, 455 F.3d at 627. And in this case, it very well could be that Boxill was the more desirable and appropriate candidate for promotion to Laboratory Supervisor for entirely legitimate business reasons. But on the record before it, the Court finds that a reasonable jury might find otherwise. Thus, this is a case that has to be tried, not resolved on summary judgment.

### C. Race Discrimination

In the single count of her Complaint, Plaintiff alleges both race and national origin discrimination. She fails, however, to make out a prima facie case for race discrimination.

18

The final element of a prima facie case of failure to promote under the *McDonnell Douglas* burden-shifting framework is that a similarly-situated employee *outside* the protected class received the promotion. *Provenzano*, 636 F.3d at 812-13. In this case, however, it is not disputed that Boxill—the person whom the Red Cross chose for promotion over Tesfa—is also Black. Accordingly, Tesfa cannot make out a prima facie case for race discrimination. The Red Cross is therefore entitled to summary judgment on Tesfa's claim for race discrimination.

## III.

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary judgment (ECF No. 28.) The Court finds that summary judgment is appropriate on Plaintiff's claim of race discrimination. There remains a genuine issue of material fact for trial, however, as to Plaintiff's claim of national origin discrimination under Ohio Rev. Code § 4112.02.

**IT IS SO ORDERED**.

                                                    /s/ Gregory L. Frost
                                                GREGORY L. FROST
                                                UNITED STATES DISTRICT JUDGE